United States District Court
Southern District of Texas
**ENTERED**
February 12, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| INTREPID SHIP MANAGEMENT, INC., | § | |
| VESSEL MANAGEMENT SERVICES, INC. | § | |
| and CROWLEY MARITIME CORP. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. G-12-243 |
| | § | (Consolidated with G-12-cv-359) |
| OCEAN PROSPECTOR, her equipment, | § | |
| tackle, appurtenances, et., *in rem*, and | § | |
| PLANT RECOVERY COMPANY, | § | |
| *in personam* | § | |

## REPORT AND RECOMMENDATION

Before the Court, by referral from the Honorable George C. Hanks, Jr., United States District Judge, are two Motions for Partial Summary Judgment filed by Malin International Ship Repair and Drydock, Inc., (Malin).  One seeks the dismissal of the negligence claims asserted against Malin by Intrepid Ship Management, Inc., Vessel Management Services, Inc. and Crowley Maritime Corporation (hereinafter "Crowley"); the other seeks the dismissal of Crowley's breach of contract claims against Malin.  The motions have been fully briefed and are ripe for a determination.  Accordingly, having reviewed the Parties' submissions and their arguments at a hearing on the motions, the Court now submits this Report and Recommendation to Judge Hanks.

This case involves an allision between the RESOLVE, a tug and barge unit owned by Crowley. and the starboard pontoon of the OCEAN PROSPECTOR, a semi-submersible drilling rig (Rig), while it was moored against the T-head of the dock at Pier 41 located at Malin's facility in the Port of Galveston.  Plant Recovery Company (PRC) contracted with Malin to moor the Rig at Pier 41 for some repair work.  The Rig arrived on May 16, 2012.  Once moored, its pontoons

extended about eight to ten feet into the navigable mouth of the Pier 41 slip; however, there remained ample room for vessels to enter and exit the slip safely.  In fact, several tug and barge units similar to the RESOLVE did so during the fourteen weeks before the allision.

On August 3, 2012, the RESOLVE arrived at Malin for some routine maintenance and docked in the slip at Pier 41 without incident.  At about 3:00 a.m., on August 4, 2012, the captain of the RESOLVE, Johnny Ray Caraway, decided to depart and a Galveston harbor pilot, Derrek Tracy, boarded the vessel to pilot its departure.  Two harbor tugs assisted the RESOLVE's exit from the slip.  Shortly after it cast off the RESOLVE allided with the starboard pontoon of the Rig.  According to Captain Caraway, he was not even aware of the allision until later that evening when a leak in the RESOLVE's starboard ballast tank was discovered.

Crowley sued the Rig *in rem* for the damage to its vessel and had it arrested.   PRC answered and filed a counter-claim for damages to the Rig.  Crowley then asserted claims against Malin for negligence and breach of contract.   These latter claims are the target of Malin's summary judgment motions.

THE NEGLIGENCE CLAIMS

Crowley's live negligence claims[1] allege that Malin breached its duty to provide a safe berth by failing to exercise reasonable care in two respects: (1) failing to warn Crowley of the underwater obstruction created by the Rig's pontoon and (2) failing to provide safe egress from its berth at Pier 41.

---

[1]   In its response to the motions Crowley abandoned its claims of state and federal mooring regulatory violations by Malin and Malin's breach of the regulatory duty to mark submerged hazards.

2

It is implied by law that a wharfinger will exercise reasonable diligence to provide a safe berth and to warn a person lawfully using its facilities of any unexpected hazard or deficiency at the berth or in its approaches of which it may have knowledge, or should have knowledge in the ordinary course of diligence.  See, Orduna, S.A. v. Zen-Noh Grain Corp., 913 F.2d 1149, 1152 (5th Cir. 1990) (citing, Bunge Corp. v. M/V FURNESS BRIDGE, 558 F.2d 790, 795 (5th Cir. 1977)).   Reasonable diligence requires either removing the hazard or giving due notice of its existence to vessels about the use the berth.  Smith v. Burnett, 173 U.S. 430 (1899).  The duty only applies to hidden hazards not reasonably known to the vessel operator.  Trade Banner Line, Inc. v. Caribbean S.A. Co., S.A., 521 F.2d 229, 230 (5th Cir. 1975).  It is this duty Crowley alleges Malin breached.

This Court believes that Crowley can present a submissible negligence case.  The Parties concede that there was some intrusion by the Rig's pontoons into the navigable waters of the slip; that they were not marked; and that Malin gave no warning of the presence of the pontoon's intrusion.  It can be reasonably inferred that the pontoon's intrusion should have been known to Malin in the ordinary course of diligence.  And there can be no doubt that the allision occurred, in part, because of the starboard pontoon's partial obstruction of the navigable waterway.  Additionally, Crowley's evidence, which must be believed, is that the pontoons were completely submerged, that they were not visible at the surface, and that their existence was unknown to Captain Caraway or Pilot Tracy.

Malin alleges that the pontoons were partially above the surface and visible, but this is only a disputed question of fact.  Malin's primary argument is that Tracy, as a local pilot "may be charged with knowledge of a local condition as a matter of law."  Osprey Ship management v.

3

Foster, 2008 WL 4371376, at *24 (S.D. Miss., Sept. 18, 2008) aff'd 287 F.Appx. 425, 432 (5th Cir. 2010).   As a result, Malin argues that Tracy's lack of knowledge of the pontoons is a "superceding" cause of the accident which precludes Malin's negligence, if any, from being a legal or proximate cause of the allision.   This Court, however, is not persuaded.   While Malin correctly quotes the language in Osprey, the pilot in that case allowed the vessel to stray outside the intended channel which resulted in an allision with a **known** but submerged shipyard structure; the pilot was ultimately found 50% at fault because he should have know he was outside the channel.   Moreover, Osprey's language is permissive.   Given the summary judgment evidence in this case it is the opinion of this Court that Tracy's lack of knowledge can only constitute a "contributory" cause, if any, to the allision.   Accordingly, the Court **RECOMMENDS** that Malin's Motion for a Partial Summary Judgment (Instrument no. 169) as to Crowley's negligence claims be **DENIED**.

## THE BREACH OF CONTRACT CLAIMS

Crowley asserts two breach of contract claims.   First, Crowley alleged it is entitled to contractual indemnification from Malin.   The terms and conditions incorporated by reference into the Purchase Order Crowley issued on the Malin berthing provided that Malin would defend and indemnify Crowley against all claims asserted against it "in connection with or incident to this Order or work to be performed hereunder."   Since Malin did not perform any of the routine maintenance on the Rig while it was docked at Pier 41, Crowley argues that "work" includes the provision of safe egress from the berth.   Second, Crowley alleged in its Third-Party Complaint that Malin breached its contractual duty to "protect the (RESOLVE) from any and all damages …

while (it) is on (Malin's) property" and "assume all risks of damage to (the RESOLVE) … from any cause whatsoever except acts of God or the sole negligence of" Crowley.

Malin disputes Crowley's conclusion that its Purchase Order constituted the contract between them.  It argues, instead, that its Invoice sent to Crowley following the departure of the RESOLVE is the relevant contract and its Invoice protects it from Crowley's claims.  It also, obviously, disputes Crowley's definition of "work."  It finally argues that Crowley's present characterization of its claim as Malin's breach of its contractual obligation "to provide 'adequate support for berthing the barge and tug,'" is the assertion of a new claim not previously pleaded in its Third-Party Complaint and cannot be asserted now in an effort to avoid summary judgment. Cutera v. Board of Supervisors, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.")

At the outset, the Court notes that this is a non-jury case and that the Parties agreed, at the hearing, that considering Crowley's breach of contract claims at trial would not significantly prolong the presentation of the relevant evidence.  In fact, Crowley's second claim, if viable at all, is little more than a reassertion of the factual bases of its negligence claims, just under a different title; therefore, if Crowley can prove its negligence claim the breach of contract claims may be of no practical consequence.

As to Crowley's first claim of breach of contract there is no real dispute about the applicable law and it merits little discussion.  "The chief consideration when determining the validity of contractual terms - - in contracts with or without a nexus to the internet - - is whether the party to be bound had reasonable notice of the terms at issue and whether the party manifested

assent to those terms", <u>One Beacon Ins. Co. v. Crowley Marine Services</u>, 648 F.3d 258, 269 (5th Cir. 2001), and for extrinsic terms to be incorporated by reference, a party must be notified of and directed to those terms.  <u>Dakota Foundry, Inc. v. Tromley Industrial Holdings</u>, 891 F.Supp. 2d 1088 (D.S.D. 2012), <u>see</u> <u>also</u>, <u>Trico Marine Services v. Stewart & Stevenson Technologies, Services</u>, 73 S.W.3d 545 (Tex. App. -- Houston [1st Dist.] 2002, pet. denied).

The primary dispute between Malin and Crowley is concerning whose contract controls. Malin alleges that its Invoice, which had been provided to Crowley without objection and honored on all other jobs performed by Malin, was binding; that it has never received any copies of Purchase Orders from Crowley, only their billing numbers; that Crowley's terms and conditions referenced in its Purchase Order were never a part of Malin's prior dealings with Crowley; and that Malin had no actual or constructive notice or knowledge of the existence or content of any Purchase Order terms and conditions.  On the other hand, Crowley alleges that its Purchase Order was issued to Malin before the RESOLVE even arrived; that Malin was notified of the existence of the Purchase Order and its reference number; that the Purchase Order clearly incorporated Crowley's other terms and conditions available on the internet by reference; that Malin had knowledge of the existence of the terms and conditions as manifested by its compliance with their requirement of obtaining $700,000.00 more insurance coverage than Malin normally carried; and that Malin's own Invoice permitted written modification of its terms and conditions.

As to Malin's accusation that Crowley is asserting a "new" breach of contract claim, the manner in which Crowley characterized this claim in its response is, arguably, not inconsistent with or an unreasonable extension of the claim as pleaded for breach of the relevant contractual clause.

6

In the opinion of this Court the Parties' opposing positions will require the resolution of some material fact issues.  While Malin appears to presently have the stronger arguments, there is also sufficient reason to believe that the better course would be to proceed to a full trial of the breach of contract claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  This Court, therefore, **RECOMMENDS** that Malin's Motion for Summary Judgment (Instrument no. 168) as to Crowley's breach of contract claims be **DENIED**.

The Clerk **SHALL** send a copy of this Report and Recommendation to the Parties who **SHALL** have until **February 26, 2016**, to file objections pursuant to 28 U.S.C. §636(b)(1)(C). The Objections **SHALL** be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553.  Failure to file written objections within the prescribed time **SHALL** bar any Party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this _____12th_____ day of February, 2016.

_____

John R. Froeschner
United States Magistrate Judge